# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2015 | **DATE** | 7/2/2002 |
| **CASE TITLE** | Stephen J. Denari vs. Genesis Insurance Co. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion to Compel certain documents [#52] is granted in part and denied in part. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| ✓ | Copy to judge/magistrate judge. | |

number of notices: 4

JUL 0 3 2002
date docketed

docketing deputy initials

7/2/2002
date mailed notice

courtroom deputy's initials: FT/secy

Document Number: 64

CLERK, U.S. DISTRICT COURT.

02 JUL -2 PM 3: 39

Date/time received in central Clerk's office: 10

mailing deputy initials: FT secy

STEPHEN J. DENARI,                )
                                  )    No.  01 C 2015
         Plaintiff,               )
                                  )    Judge Milton I. Shadur
                                  )
GENESIS INSURANCE CO.,            )    Magistrate Judge
et al.                            )    Arlander Keys
                                  )
         Defendants.              )
                                  )

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Stephen J.
Denari's Motion to Compel certain documents possessed by
Genesis Insurance Co. ("Genesis").   Genesis contends that
these documents are protected by the insurer-insured
privilege, the attorney-client privilege, and/or the work
product doctrine.   For the reasons set forth below, Mr.
Denari's Motion is granted in part and denied in part.

### BACKGROUND FACTS

From June 1997 to November 1999, Mr. Denari was the Vice
President of Corporate Development at Navigant Consulting,
Inc. ("Navigant").   Navigant prudently purchased liability
insurance policies from Genesis and Federal Insurance Company
("Federal") on behalf of its officers and directors.   These
policies are at the heart of the present litigation.

On November 22, 1999, Navigant issued a press release
revealing that it had made a number of previously undisclosed

loans to several of its officers, and had potentially violated pooling accounting rules. Navigant promptly dismissed Mr. Denari and Mr. Charles A. Demirjian[1], another Navigant officer implicated in the loan scheme, and announced that it was restating its earnings for the first, second, and third quarters of 1999. The disclosure triggered a freefall in the price of Navigant's stock. As a result of this decline, numerous Navigant shareholders filed lawsuits against Navigant and the allegedly offending officers, including Mr. Denari.[2] *See Stearns v. Navigant Consulting, Inc., et al.,* No. 99 CV-7617 (N.D Ill.)

Conflicts of interest between the various defendants prompted Genesis to approve separate counsel for Mr. Denari, the other individual officers, and Navigant.[3] One of the most contentious of the aforementioned conflicts was between Navigant and Messrs. Denari and Demirjian, who complained that Navigant was trying to minimize its own liability by making

---

[1] Mr. Demerijian served as Navigant's Vice President, General Counsel, and Secretary from September 1997 through November 1999.

[2] On January 27, 2000 the approximately 20 shareholder suits were consolidated before Judge Ruben Castillo in the Northern District of Illinois.

[3] Although Genesis approved the defendants' request for separate counsel, it reserved its right to deny coverage for the *Stearns* action on several grounds.

2

them scapegoats for Navigant's accounting scandal[4]. By June 2000, it was apparent that the rift was unmendable; Messrs. Denari and Demirjian subsequently filed suit against Navigant, its then-current management, and Navigant's outside auditor, KPMG L.L.P, in the Circuit Court of Cook County, Illinois, alleging defamation and conspiracy, amongst other wrongs.

In the interim, Genesis and the parties to the *Stearns* litigation engaged in ongoing settlement negotiations. The negotiations were difficult and protracted, with each of the defendants attempting to shape the settlement in a form that benefitted their own agenda. Mr. Denari was particularly vociferous during negotiations, convinced that Genesis was aligning itself with Navigant at his expense. The evidence indicates that Mr. Denari went so far as to provide the plaintiffs' counsel with information and evidence bearing upon Navigant's and KPMG's responsibility for the accounting scandal.

Ultimately, Genesis intervened as a party in the *Stearns* action and sought Judge Castillo's approval of a settlement proposal that was allegedly favored by Navigant. Genesis' proposed settlement agreement resolved the *Stearns* litigation,

---

[4]     In particular, Mr. Denari claimed that Navigant was improperly attempting to shield its auditor, KPMG L.L.P. ("KPMG"), from liability; possibly because Navigant's counsel, Sidley & Austin, allegedly had also represented KPMG.

without any financial contribution by the individual defendants; secured a release from the *Stearns* plaintiffs in favor of all defendants; and secured a release by Navigant of various claims against the individual defendants, including Mr. Denari.

Mr. Denari had threatened to derail the settlement unless Navigant exonerated Mr. Denari for any alleged wrongdoing, and eliminated the release that Navigant was advocating on behalf of KPMG. Genesis and Navigant pushed ahead with their settlement proposal, without succumbing to either of Mr. Denari's demands. Mr. Denari formally objected to terms of the settlement agreement, arguing that the proposed settlement was not made in good faith and would deplete the proceeds from the Genesis policy to fund the settlement. Judge Castillo overruled Mr. Denari's objections, finding that Genesis had acted in good faith and in accordance with applicable law in agreeing to the settlement.

Since the inception of the *Stearns* action, Navigant intermittently paid Mr. Denari's attorneys' fees and expenses incurred in his defense. In April 2000, however, Navigant closed the vault, refusing to advance funds to Mr. Denari or his attorneys. Although Genesis approved separate counsel for Mr. Denari, it reserved its right with regard to coverage. Genesis ultimately denied Mr. Denari's request for fees - at

Navigant's insistence, Mr. Denari alleges - ostensibly because Mr. Denari failed to satisfy the contractual prerequisites for coverage.

Mr. Denari subsequently filed suit in the Northern District of Illinois against Genesis and Federal, alleging that these defendants improperly refused to pay his defense costs incurred in the *Stearns* litigation. *Denari v. Genesis Ins. Co, et al.,* No. 01 C 2015 (N.D. Ill.) The case was assigned to Judge Shadur.

During the course of discovery, Mr. Denari sought to obtain certain documents from Genesis, which he claims are directly relevant to his claims. Genesis objected to producing many of these documents on the basis of the insurer-insured privilege, the attorney-client privilege, and the work product doctrine. Mr. Denari filed a Motion to Compel, and briefing on the subject of privilege ensued. The parties' briefs focused upon the applicability of the insurer-insured privilege; whether the fiduciary-duty exception to the privileges and work product doctrine required Genesis to produce its communications with Navigant; and the discoverability of documents regarding Navigant's accounting restatements. Mr. Denari also moved to compel Federal to produce certain documents in its possession.

On April 22, 2002, Judge Shadur addressed many of these issues in open court. Judge Shadur characterized Mr. Denari's arguments in support of his Motion as "sound and persuasive," but ruled that Mr. Denari's requests for the production of Genesis's documents as to Navigant's accounting restatements and KPMG's work for Navigant were without merit.

As to communications between Mr. Denari and Genesis, Judge Shadur explained that Genesis could not rely upon the insurer- insured privilege to protect these communications from disclosure. Judge Shadur conceded that communications between Genesis and its other insureds - such as Navigant - would likely be protected by the insurer-insured privilege. The court admonished Navigant, however, that, if Genesis had been revealing its communications with Mr. Denari to Navigant, then Genesis could not rely on the privilege to shield its communications with Navigant from disclosure to Mr. Denari:

> [I]f in fact [Genesis and Navigant] have engaged in that communication, then it seems to me that you have essentially forfeited the ability to rely on [the insurer-insured privilege.] And I recognize [that Navigant] may have an interest that's impaired by that. But that's a product of your having turned something over to somebody who turns out to be faithless to the obligation of confidentiality, and so you can beef with them. But it seems to me that if they have indeed given them more generalized distribution, for example of [Mr. Denari's] confidence to other insureds, then I think he's entitled to say, 'Wait a minute. What's sauce for them is sauce for me as well.'

4-22-02 Hearing at pp. 12-13.

6

The court instructed Genesis to submit for *in camera* review those documents allegedly protected by the attorney-client privilege and work product doctrine. Turning to Mr. Denari's Motion to Strike Federal's Response to the Motion to Compel, Judge Shadur stated that "absent something more than I get in response to the motion to compel and motion to strike, I am granting the motion to strike." *Id.* at 9.

## DISCUSSION

Genesis has submitted to this Court approximately 145 documents for *in camera* review. Apparently heeding Judge Shadur's admonishments in open court, Genesis has largely limited its claims of privilege before this Court to the attorney-client privilege and the work product doctrine. Genesis has divided the contested documents into five categories: 1) communications between Genesis' coverage counsel and Genesis relating to the underlying litigation; 2) copies of Genesis' counsel's handwritten notes; 3) copies of draft documents prepared by coverage counsel for Genesis's review; 4) documents that Genesis' counsel forwarded to Genesis for review; and 5) documents that Genesis labels, simply, other work product.

Before addressing the merits of Genesis's claims of privilege, the Court will set forth the law governing its application of the attorney-client privilege and the work product doctrine.

## I.  The Attorney-Client Privilege and Work Product Doctrine

Because this is a diversity action, Illinois law, and not federal law, controls the Court's application of the attorney-client privilege in this case. *Urban Outfitters, Inc. v. DPIC Co., Inc.,* 203 F.R.D. 376, 378 (N.D. Ill. 2001)(citing Fed. R. Evid. 501). While state law applies to the rules governing the attorney-client privilege, "the source of law in work-product terms is federal rather than state." *A.O. Smith Corp. v. Lewis, Overbeck & Furman,* No. 90 C 5160, 1991 WL 192200, at *4 (N.D. Ill. Sept. 23, 1991). The party seeking to invoke either the attorney-client privilege or the work product doctrine bears the burden of demonstrating that the privilege should apply. *See FMC Corp. v. Trimac Bulk Trans. Serv.,* No. 98 C 5894, 2000 WL 1745179, at * 1 (N.D. Ill. Nov. 27, 2000).

### A.  The Attorney Client Privilege

The attorney-client privilege seeks to encourage full and frank communications between a client and its attorney, by removing the threat that the communications would be exposed in litigation. *See* 134 Ill.2d R. 201(b)(2). Illinois courts interpret the privilege narrowly; it is the privilege itself, and not the duty to disclose such communications, that is the exception to Illinois' policy of encouraging full disclosure. *Consolidation Coal Co. v. Bucyrus-Erie Co.,* 89 Ill.2d 103, 117- 19, 432 N.E.2d 250 (Ill. 1982).

The Illinois Supreme Court set forth the elements of the attorney-client privilege in *People v. Adam*, 51 Ill.2d 46, 48, 280 N.E.2d 205 (1972):

> 1)Where legal advice of any kind is sought 2) from a professional legal advisor in his capacity as such 3) the communications relating to that purpose 4) made in confidence 5) by the client 6) are at his instance permanently protected 7) from disclosure by himself or the legal advisor 8) except the protections be waived.

Almost twenty years later, the Illinois Supreme Court authored the seminal case regarding the application of the attorney-client privilege in actions between insurers and insureds. *Waste Management, Inc. v. International Surplus Lines Ins. Co.,* 144 Ill.2d 178, 579 N.E.2d 322 (Ill. 1991). In *Waste Management*, the Court found that, in a declaratory judgment action, an insured could not rely upon the attorney-client privilege to shield from the insurer the insured's communications with its attorney in the underlying litigation. The Court explained that the cooperation clause in the applicable insurance policy imposed a broad duty upon the insured, and required the insured to disclose any communications it had with defense counsel. 144 Ill.2d at 192, 579 N.E.2d at 328 (the communications must be disclosed where, as here, the insurer is ultimately liable for funding the settlement or judgment.)

The Court found that the common-interest doctrine provided a second, independent basis for disclosure. *Id.* at 193, 579 N.E.2d at

328. The Court explained that "when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not *necessarily* privileged in a subsequent controversy between the two parties." *Id.* (emphasis added.) The Court noted that both the insured and the insurer had a common interest in defeating or settling the plaintiffs' claims, and that the communications between the insured and its counsel were reasonably calculated to further that common interest. *Id.* at 194, 579 N.E.2d at 328. (rejecting insured's claim that the common interest doctrine should not apply if the insurers provided no defense in the underlying litigation, because the insured's counsel has an obligation to act for the mutual benefit of insurer and insured.)

The instant case is distinguishable from *Waste Management* in several important respects. Initially, the Court notes that neither party has identified a cooperation clause or other contractual provision requiring Genesis and Mr. Denari to disclose their communications with counsel to the other. Additionally, Mr. Denari is seeking to compel Genesis to disclose its communications regarding coverage – Genesis is not seeking to discover communications regarding the merits of the underlying litigation. The Court finds that this distinction is significant for a number of reasons. Unlike the parties in *Waste Management*, the facts in this case indicate that the parties' interests, particularly with

regard to coverage, were rarely common. To the contrary, Mr. Denari adamantly opposed Genesis' proposed settlement of the suit.

More importantly, both parties engaged in contentious discussions regarding Genesis' obligation to fund Mr. Denari's defense costs long before Mr. Denari actually filed the instant action. The parties do little to highlight the dates corresponding to the progression of the rift between them. And if Mr. Denari were seeking to advance the common interest doctrine as a basis for discovering Genesis' communications with its counsel regarding coverage, the lapse would be significant. *See National Union Fire Ins. Co. v. Continental Ins. Co.,* No. 85 C 7080, 1987 WL 4806 (N.D. Ill. May 1, 1987). However, Mr. Denari relies upon *Waste Management* only to rebut Genesis' assertion that the insurer-insured privilege prevents discovery of such communications as they relate to him; Judge Shadur agreed with Mr. Denari's interpretation of *Waste Management* in this regard, and Genesis, for the most part[5], does not attempt to rely upon the privilege here.

---

[5] In its discussion of the Category 2 and Category 4 documents, the Court revisits the insurer-insured privilege to the extent that Genesis attempts to rely upon it to protect its communications with Navigant. Judge Shadur ruled that, if Genesis forwarded Mr. Denari's communications to Navigant, Genesis could not rely upon the insurer-insured privilege to protect its communications with Navigant. A review of the documents in Category 4 reveals that Genesis frequently made such disclosures to Navigant, often without Mr. Denari's knowledge (ie, "bcc"). Genesis advances no argument that its communications with Navigant should be protected under the insurer-insured privilege until (or only to the extent that) it covertly disclosed its communications with Mr. Denari to

## B. The Work Product Doctrine

The United States Supreme Court first afforded protection to the thought processes, mental impressions, and opinions of attorneys under the work product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947). The work product doctrine, codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects otherwise discoverable documents if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd.,* NO. 01 C 1576, 2001 WL 1558303, at *2 (N.D. Ill. Dec. 6, 2001) (quotations omitted.) In determining whether the document was created in anticipation of litigation, courts require the party seeking to establish the privilege to demonstrate that there was a substantial and significant threat of litigation. *SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.,* No. 00 C 2855, 2001 WL 1397876, at *2 (N.D. Ill. Nov. 6, 2001).

Although the work product doctrine is broader than the attorney-client privilege, it is not absolute. The privilege may be overcome if the party seeking the discovery can demonstrate a substantial need for the document and that it cannot otherwise

---

Navigant, and the Court will not attempt to construct such an argument for it.

obtain the material absent undue hardship. *E.E.O.C. v. International Profit Assocs., Inc.*, 206 F.R.D. 215, 221 (N.D. Ill. 2002).

In analyzing documents prepared by insurance companies, courts have uniformly found that documents that are prepared for business purposes, as opposed to those prepared solely in anticipation of litigation, are not protected by the work product doctrine. *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut'l Ins. Co.,* No. 94 C 5716, 1996 WL 89225, at *1 (N.D. Ill. Feb. 27, 1996). Even when an insurance document is prepared in anticipation of litigation, the privilege is not necessarily absolute as to its insured. Courts have found that insureds are entitled to their own claims files in bad faith suits, as the claims file is frequently the only record of how the insurance company handled the claim. *Id.*

## II. The Court's In Camera Review of Genesis' Documents

Genesis has divided into five categories the communications it deems protected from disclosure. The Court will address each category in turn.

### A. Communications Between Genesis' Counsel and Genesis.

Between the time Genesis began its investigation of the insured's coverage claims in the *Stearns* action and until the dispute was resolved, Genesis communicated with its counsel about the underlying events as they related to coverage, the exposure presented by the underlying litigation, or its overall strategy

with respect to the case. Genesis argues that these communications constitute confidential communications protected by the attorney client privilege, and the work product doctrine.

Unquestionably, communications between an insurance company and its attorney are privileged. *See Old Second Nat'l Bank of Aurora v. Commercial Union Midwest Ins. Co.*, No. 99 C 3941, 1999 WL 1068635 (N.D. Ill. Nov. 18, 1999). The privilege may remain intact even where its own insured seeks to discover the insurer's communications. Although Mr. Denari does not directly advance such an argument, the fiduciary exception does not require Genesis to divulge its communications with its attorney to Mr. Denari. In *Lorenz v. Valley Forge Insurance Co.*, the Seventh Circuit Court of Appeals noted that an insurer has a fiduciary obligation to its insured, and, in certain circumstances, this obligation prevents the insurer from invoking privilege in an action by the insureds. 815 F.2d 1095, 1099 (7th Cir. 1987). The Court found, however, that the fiduciary exception does not apply where an insured is represented by its own counsel, and is not represented by the insurer's counsel. *Id.*

Nevertheless, not every communication between a client and its attorney is privileged. The "[m]ere passing of communications between an attorney and his client is insufficient to invoke the attorney-client privilege." *McDonald's Corp. v. Levine,* 108 Ill. App.3d 732, 745, 439 N.E. 2d 475, 484 (Ill. 2d Dist. 1982). In

14

addition, when a corporate client, such as Genesis, is involved, the party seeking to invoke the privilege must also demonstrate that all of the recipients of the communication are within the "control group" to establish that the communication was intended to be confidential. *Id.*

In examining the communications submitted under Category 1, the Court finds that, in some instances, Genesis seeks protection for the communication of nonconfidential information, that discloses neither the attorney's mental impressions, opinion, or strategy. Some of these communications consist only of Genesis' coverage counsel forwarding nonconfidential information onto Genesis, without reflection or advice. The following documents fall within this category and are not privileged: document numbers 90, 115, and 407.

Document 347 purports to be a "Multiple Interest Analysis" prepared, apparently, by Genesis' in-house counsel. Genesis has submitted only the first page of this report, which appears to evaluate the claims arising out of the *Stearns'* litigation and the corresponding claims for coverage. Although Document Number 347 appears as though it might be eligible for protection under the attorney-client privilege and/or the work product doctrine, Genesis has not demonstrated that all of the numerous recipients of this incomplete report are within its control group. *See Pell v. Board of Education, Township High School Dist. 113,* 32 F.3d 1053, 1065 n.

26 (7th Cir. 1994) (Illinois relies upon the control group test to determine whether the attorney-client privilege applies.) By failing to do so, Genesis has not satisfied its burden of demonstrating that the document is and was intended to be confidential.

Given the apparently sensitive nature of this document, the Court is willing to extend to Genesis the opportunity to correct this oversight. The Court directs Genesis to submit to the Court, within 14 days of the date of this decision, a full copy of document number 347, and a submission demonstrating that each of the recipients of document number 347 falls within Genesis' control group.

After reviewing document numbers 36, 179, 399, 401, 408, 433, 434, 435, 442, 469, 489, 496, 497, and 499, the Court concludes that these documents fall within the protections of the attorney-client privilege and/or the work product doctrine. Therefore, the Court denies Mr. Denari's Motion with respect to document numbers 36, 179, 399, 401, 408, 433, 434, 435, 442, 469, 489, 496, 497, and 499. However, the Court grants Mr. Denari's Motion to Compel with respect to document numbers 90, 115, 407, and 461, and reserves ruling on document number 347.

**B. Genesis' Counsel's Handwritten Notes**

Category 2 is comprised of notes that Genesis' counsel created when communicating with the insureds in the underlying litigation.

Genesis argues that the work product doctrine protects these notes from disclosure, because they reflect the aspects of the conversation that counsel found most significant. Genesis also asserts that the attorney-client privilege applies to many of the notes, without elaboration.

A number of these notes cannot be considered either work product or confidential communications. The notes, as listed below, reflect neither the attorney's opinion, insights or strategy, and often simply document Genesis' counsel's discussions with Mr. Denari or Mr. Denari's counsel. For example, document number 198 discloses Mr. Denari's counsel's billable rates, and document number 214 discloses, primarily, Mr. Denari's address. The Court fails to see anything about the content of these (and many other notes) that would indicate that Genesis' counsel was selectively recording only the significant aspects of his conversations with Mr. Denari in anticipation of litigation, as opposed to merely making notes of an unprivileged (at least with respect to Mr. Denari) communication. Therefore, the Court finds that the following document numbers are not entitled to work product or attorney-client privilege protection: 188, 190, 192, 196, 198, 200, 201, 203, 204, 214, 218, 223, 224, 233, 236, 238, 240, and 243.

A closer call are the notes reflecting Genesis' communications with Navigant and/or its attorney. As Judge Shadur explained, because Genesis revealed a number of its communications with Mr.

Denari to Navigant, Navigant had no reasonable expectation that its communications with Genesis would remain confidential with respect to Mr. Denari. But this speaks only to the attorney-client privilege and not the work product doctrine. A review of document numbers 206, 207, 216, 217, and 221, which documents Genesis' counsel's impressions of his conversations with Navigant representatives, tends to reveal attorney impressions and strategy and are, therefore, protected under the work product doctrine.

The Court further finds that document numbers 218 and 224 tend to reflect attorney impressions and opinion, and are entitled to protection under the work product doctrine. Document numbers 208, 209, 220, 229, 230, 232, 244, and 245 are records of confidential conversations and, in some instances, record attorney impressions and opinions.

Therefore, the Court grants Mr. Denari's Motion with respect to document numbers 188, 190, 192, 196, 198, 200, 201, 203, 204, 214, 223, 224, 233, 236, 238, 240, and 243, and denies Mr. Denari's Motion as to document numbers 206, 207, 208, 209, 216, 217, 218, 224, 220, 221, 229, 230, 232, 244, and 245.

### C. Draft Documents Prepared By Counsel for Genesis' Review.

The documents in Category 3 consist of correspondence between Genesis' coverage counsel and Genesis. In every instance, the substance of the communication concerns coverage counsel's request for comment, revision, and approval on draft filings or

18

correspondence with the insureds, and Genesis' response. The Court agrees that each of these documents contains the mental impressions of Genesis' coverage counsel, and that, because these documents were prepared by coverage counsel, and were not simply delegated tog in-house counsel or a claims analyst, Genesis has tipped the scales in favor of a finding that the documents were prepared in anticipation of litigation concerning coverage.

For example, document numbers 13, 14, 16, 18, 23, 26, 52, 67, and 75 consist of counsel's drafts of letters explaining to Navigant and the individual defendants the information that Genesis required before it could approve coverage. Similarly, document numbers 80, 81, and 104 are counsel's proposed letters in response to inquiries from Mr. Denari. In each instance, counsel was seeking Genesis' comments, revisions and/or approval. The Court concludes that the remaining documents are also work product.

In response to Genesis' claim that the work product doctrine applies even where the work product relates to Mr. Denari, Plaintiff argues only that, if the insurer-insured privilege applies, then Genesis was his agent for the purposes of obtaining legal advice for him and the information must be divulged. But Judge Shadur has already ruled that Genesis cannot use the insurer-insured privilege as a sword against Mr. Denari, and Genesis has not attempted to rely upon that privilege to protect the communications here.

Even if Mr. Denari had launched a broader attack against Genesis' claim of privilege, however, the Court finds that his status as an insured, standing alone, would not entitle him to discover Genesis's legitimate work product. As explained above, the Seventh Circuit has rejected the argument that a fiduciary duty exists between an insurer and its insured that would compel the insurer to reveal such communications, at least where the insured was represented by counsel. *See Lorenz*, 815 F.2d at 1099.

Therefore, the Court denies Mr. Denari's Motion to Compel with regard to document numbers 13, 14, 16, 18, 23, 26, 52, 67, 75, 80, 81, 101, 104, 116, 120, 282, 348, 349, 358, 362, 396, 400, 402, 405, 406, 409, 410, 411, 412, 413, 414, 417, 418, 419, 420, 423, 424, 425, 444, 445, 447, 448, 453, 454, 455, 456, 460, 462, 463, 465, 472, 484, 498, and GEN. 02728-41.

### D. Documents Forwarded by Genesis' Counsel to Genesis For Review.

Genesis argues that it is entitled to withhold from Mr. Denari its transmittal of documents from counsel to Genesis for review, because the disclosure would reveal Genesis' attorney's impression of which documents were significant. In most instances, Genesis' coverage counsel did little more than "cc" Genesis on his correspondence with the insureds, or forward, without comment, documents received from the insureds. Courts are divided as to whether an attorney's selection of documents as significant or important is entitled to protection under the work product

doctrine.  Compare *Sprock v. Peil,* 759 F.2d 312, 317 (3d Cir.
1985)(documents selected by an attorney for his witness to review
in preparation of his deposition are work product) with *In Re San
Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1015-17 (1st
Cir. 1988)(because the documents would be revealed later, requiring
counsel to provide a list of the documents he intended to use
during the deposition did not violate the work product doctrine.)

In *Stone Container Corp v. Arkwright Mutual Ins. Co.,* No. 93
C 6626, 1995 WL 88902, at *3 (N.D. Ill. Feb. 28, 1995), Judge
Nordberg determined that an attorney's selection of documents for
witness review may constitute opinion work product.  Judge Nordberg
noted that the documents in question "were never meant to 'see the
light of day because the [documents] had been selected not for use
in the examination of an adverse or neutral witness, but for a
markedly more private purpose – preparation of the attorney's own
client." *Id.* at *4 (quotations omitted.)  Therefore, the  court
found that the work product doctrine should apply.  *Id.*

Notably, the cases discussed above all involved documents used
to refresh a witness' memory under Fed. R. of Evid. 612; a rule not
implicated in the instant case.  And as a general rule, the
wholesale forwarding of unprivileged communications to an attorney
or a client does not constitute work product entitled to protection
from disclosure.  *See generally, FMC Corp. v. Trimac Bulk Transp.
Servs. Ins.* , No. 98 C 5894, 2000 WL 1745179, at *3 (N.D. Ill. Nov.

21

27, 2000). However, to the extent that the nonprivileged documents have already been produced to Mr. Denari, the Court agrees with Judge Nordberg: requiring Genesis to forward documents that have already been produced would result in little more than revealing counsel's "opinion of the most important legal and factual issues in the litigation." *Stone Container Corp.,* 1995 WL 88902, at *4.

Therefore, the Court will review the documents to determine whether the underlying communication or coverage counsel's communication with Genesis is privileged. If the communication is not privileged, and if Genesis has already produced the underlying communication, Genesis need not produce it again here. However, if the Court determines that the communication is not privileged and Genesis has not produced it to Mr. Denari, Genesis must produce the document as requested by Mr. Denari, even though the production might tend to reveal that Genesis' counsel identified the document as significant. Of course, Genesis need not produce its privileged communications. Thus, the Court's task becomes one of determining whether the underlying communications themselves are privileged or whether they (should) have been produced to Mr. Denari.

The Court readily concludes that the underlying documents corresponding to document numbers 15, 27, 71, 79, 82, 134, 156, 280, 313, 314, 318, 319, 320, 326, 327, 329, 330, 404, and 464 are not privileged and should have been turned over to Mr. Denari. The underlying documents are correspondence between Genesis and Mr.

Denari and/or his various counsel. Genesis represents that it has already produced these underlying communications to Mr. Denari. To the extent that Genesis has done so, it need not produce them to Mr. Denari here. If, however, Genesis has failed to turn over any of the underlying documents associated with the above referenced document numbers, the Court orders Genesis to produce the corresponding document number(s).

Document numbers 281, 486, 488, and 494 reflect Genesis' communications with Navigant regarding the proposed settlement agreement, including Navigant's proposed changes to Genesis' draft agreement. These communications are not privileged. If Genesis had not disclosed to Navigant Mr. Denari's communications, the Court would have concluded that these documents were protected by the insurer-insured privilege. However, as Judge Shadur stated during the April 22, 2002 hearing, Genesis and Navigant may not rely upon the insured-insurer privilege to protect these communications, because Genesis was faithless to its obligation of confidentiality by revealing to Navigant its communications with Mr. Denari. Indeed, many of the documents in Category 4 reveal that Genesis forwarded its communications with Mr. Denari to Navigant, without Mr. Denari's knowledge (i.e. "bcc".) Genesis offers no alternative basis for withholding these documents.

Notably, in forwarding these communications with Navigant to Genesis, Genesis' coverage counsel did not offer his opinion or

reveal his impressions to Genesis. Because neither the underlying communication nor Genesis' counsel's subsequent forwarding of the communication to Genesis are privileged, the Court grants Mr. Denari's Motion to Compel document numbers 281, 486, 488, and 494.

Document number 403 reveals communications between Navigant and Genesis regarding the reimbursement of Mr. Denari's attorneys' fees and, for the reasons set forth above, must be produced.

Document number 490 is something of a hybrid; although the underlying communication (from Navigant to Genesis' coverage counsel) is not privileged, Genesis' coverage counsel's communication of that document to Genesis contains his opinions and advice and is, therefore, privileged. Therefore, the Court orders Genesis to produce the underlying communication to Mr. Denari, but finds that Genesis need not produce the accompanying correspondence between Messrs. Standish and Zartman.

Document numbers 492, 493, and 495 are communications between Genesis and coverage counsel concerning proposed drafts of the settlement agreement, and are protected by the work product doctrine. Therefore, the Court finds that Genesis need not disclose these documents.

Finally in submitting the documents labeled as GEN Nos. 00065, 00227, and 00446, Genesis included only its facsimile transmission sheet and the corresponding message confirmation. Document number 317 is missing entirely. The Court has no basis on which to

determine whether these documents are privileged. The Court orders Genesis, within 14 days of this order, to produce to the Court for *in camera* inspection the underlying documents corresponding to these document numbers.

Therefore, if Genesis has failed to produce to Mr. Denari any of the underlying documents corresponding to document numbers 15, 27, 71, 79, 82, 134, 156, 280, 313, 314, 318, 319, 320, 326, 327, 329, 330, 403, 404, 464, 486, 488, and 494, the Court orders Genesis to produce the document number that corresponds to the withheld communication. The Court further orders Genesis to produce only the underlying communication corresponding to document number 490.

The Court denies Mr. Denari's Motion to Compel with respect to document numbers 492, 493, and 495. Finally, the Court orders Genesis to submit to the Court for *in camera* review document number 317 and GEN Nos. 00065, 00227, and 00446, within 14 days of this Order.

### E. Other Work Product.

In the Fifth and final category, Genesis seeks to protect various emails and transcripts of voice-mail messages under the work product doctrine. The Court agrees that most of these documents are privileged, with two notable exceptions. Document numbers 73 and 185 are (apparently) unedited transcripts of voicemail messages that Mr. Denari's counsel left for Genesis's

coverage counsel. These documents clearly do not reflect confidential communications, at least with regard to Mr. Denari. In addition, the Court disagrees that the mere fact that Genesis' counsel had the voicemail messages transcribed necessarily reveals that Genesis' counsel viewed these messages as particularly significant. Therefore, the Court grants Mr. Denari's Motion to Compel as to document numbers 73 and 185, and denies Mr. Denari's Motion as to document numbers 37, 59, 60, 468, and 478.

### CONCLUSION

That these parties could not reach an agreement about the privileged status of approximately 145 documents is just one indicator of the deep animosity between them. After viewing these documents, the Court finds that, while many of the communications were protected by either the attorney-client privilege or the work product doctrine, others were wrongfully withheld. The Court directs Genesis to produce the latter documents, as identified in the text of the decision above.

**IT IS THEREFORE ORDERED** that:

Plaintiff's Motion to Compel be, and the same hereby is, **GRANTED IN PART, AND DENIED IN PART.**

DATED: July 2, 2002     Enter:

_Arlander Keys_
ARLANDER KEYS
United States Magistrate Judge