Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2015 | DATE | 12/12/2003 |
| CASE TITLE | Denari vs. Genesis Insurance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Genesis's motion for summary judgment is granted in part and denied in part as to Counts I and II, and granted as to Count III. Federal's motion for summary judgment on Counts I and II is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | DEC 15 2003 date docketed | |
| | Notified counsel by telephone. | | | 111 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TH ✓ | courtroom deputy's initials | 03 DEC 15 AM 3:56 | DEC 15 2003 date mailed notice |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN J. DENARI, )
)
Plaintiff, )
)   No. 01 C 2015
V. )
)
GENESIS INSURANCE COMPANY and )
FEDERAL INSURANCE COMPANY, )
)                               DEC 1 5 2003
Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

*Pro se* plaintiff Stephen J. Denari filed a three count complaint alleging that Defendants Genesis Insurance Company ("Genesis") and Federal Insurance Company ("Federal") (collectively, "Defendants") breached the terms of directors and officers liability insurance policies issued to Denari's former employer Navigant Consulting, Inc. ("Navigant"). Specifically, Denari alleges that Defendants failed to pay certain legal fees that Denari incurred as a result of claims brought against him in a securities fraud class action lawsuit. In Count I, Denari seeks a declaratory judgment that Denari is entitled to defense costs under the insurance policies. In Count II, Denari seeks damages for breach of contract. In Count III, Denari seeks damages based on an alleged civil conspiracy between Navigant and Genesis.[1]

Genesis filed a motion for summary judgment on all counts and Federal filed a motion for summary judgment on Counts I and II. As to Genesis, summary judgment is granted in part and denied in part as to Counts I and II, and granted as to Count III. As to Federal, summary

---

[1] Denari does not name Federal in Count III.

judgment is granted in part and denied in part as to Counts I and II.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F .3d 467, 471 (7th Cir. 2002).

### II. Local Rule 56.1

The Court first addresses Denari's failure to comply with the requirements of Local Rule 56.1, which governs summary judgment briefing in the Northern District of Illinois.[2] L.R. 56.1. Local Rule 56.1(a)(3) requires the moving party to provide a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). The opposing party must then file "a concise response to the movant's statement" that includes, *inter alia*, "a response to each numbered paragraph in the moving party's statement," L.R. 56.1(b)(3)(A), and "a statement, consisting of

---

[2] Local Rule 56.2 requires a defendant who files a motion for summary judgment against a *pro se* plaintiff to provide the *pro se* plaintiff with a plainly worded notice explaining a summary judgment motion, local rules governing such motions, and the consequences if the plaintiff fails to respond to the motion. L.R. 56.2. Federal served and filed the required notice. (R. 84-1.)

2

short numbered paragraphs, of any additional facts that require the denial of summary judgment."
L.R. 56.1(b)(3)(B).

Denari has failed to comply with Local Rule 56.1(b). The statements in Denari's response include additional, non-responsive information that belongs, if anywhere, in a separate statement of additional material facts pursuant to Local Rule 56.1(b)(3)(B). (*See* R. 105-1, Pl.'s Resp. to Defs.' Am. Statement of Facts in Supp. of Their Mots. for Summ. J. ("Pl.'s Rule 56.1 Statement") ¶¶ 15, 25-26, 28-32, 38-41, 43, 46-48, 52-62, 64-72, 76, 84-88, 90-92.) Although courts should be "solicitous of *pro se* plaintiffs" when assessing their compliance with procedural requirements, *Kincaid v. Vail*, 969 F.2d 594, 598-99 (7th Cir. 1992), *pro se* litigants must nevertheless comply with the local rules. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Accordingly, the Court will not consider additional, non-responsive information that Denari should have included in a separate statement of additional facts.[3] *See* L.R. 56.1(b)(3)(B); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316-17 (7th Cir. 1995).

Denari's failure to comply with Local Rule 56.1, however, does not result in an automatic grant of summary judgment. The Court still must evaluate all facts in the light most favorable to Denari, the non-moving party. *O'Donnell v. City of Chicago*, No. 02 C 1847, 2003 WL 22339285, at *1 (N.D. Ill. Oct. 14, 2003).

## BACKGROUND

Denari served as Vice President of Corporate Development for Navigant from 1997 until

---

[3] The Court further notes that in his memorandum of law, Denari cites directly to the record rather than to his Rule 56.1 statement. (R. 94-1, Pl.'s Mem. of Law in Opp. to Summ. J.) This is improper. *See Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("Citations in the fact section [of the memorandum of law] should be to the 56.1(a) or (b) statement of facts only," rather than to the record.).

Navigant terminated him in late November 1999. (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 16; R. 98-1, Genesis's Am. Statement of Material Facts ("Genesis's Rule 56.1 Statement") ¶ 16.) Genesis and Federal each issued Navigant a directors and officers liability insurance policy covering officers such as Denari during the relevant time period. (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 17; R. 98-1, Genesis's Rule 56.1 Statement ¶ 17; R. 83-1, Federal's Statement of Material Facts ("Federal's Rule 56.1 Statement") ¶ 1.)

### I.     The Genesis Policy

The insurance policy Genesis issued to Navigant (the "Genesis Policy") provided coverage from October 10, 1998 through October 21, 1999 (the "Policy Period"). (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 7; R. 98-1, Genesis's Rule 56.1 Statement ¶ 7.) Navigant later purchased coverage for claims made during the first year after the Genesis Policy expired arising from wrongful acts committed before October 21, 1999 (the "Discovery Period."). (*Id.*) The Genesis Policy covers "Loss" arising from certain "Claims" made during the Policy Period or Discovery Period against Navigant officers and directors for "Wrongful Acts." (*Id.* ¶ 8.) The Genesis Policy defines "Directors" and "Officers" as "all past, current or prospective duly elected or appointed directors and officers of the Company . . ." (*Id.* ¶ 13.) The Genesis Policy defines "Cost of Defense" as "reasonable and necessary legal fees and expenses incurred in the investigation and/or defense of any Claim and appeals therefrom, and costs of attachment or similar bonds." (*Id.* ¶ 10.) The Genesis Policy provides that Genesis shall not be liable for any "Loss" in connection with any "Claim" "[b]rought by or at the behest of, or with the assistance or active participation of, [Navigant] . . . or any Director or Officer of [Navigant] . . ." (*Id.* at ¶ 12.)

## II. The Federal Policy

The insurance policy Federal issued to Navigant (the "Federal Policy") provided coverage from October 21, 1999 to October 21, 2002. (R. 83-1, Federal's Rule 56.1 Statement ¶ 1.) The Federal Policy defines "Defense Costs" as "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the Insured Organization or the salaries of the employees, officers, or staff attorneys of the Company) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds." (*Id.* ¶ 4.) The Federal Policy defines a "Claim" to include, *inter alia*, "a written demand for monetary damages or non-monetary relief" and "a civil proceeding commenced by the service of a complaint or similar pleading." (*Id.* ¶ 5.) The Federal Policy further provides that Federal "shall not be liable for LOSS on account of any CLAIM made against any INSURED PERSON brought or maintained by or on behalf of any INSURED . . ." (*Id.* at ¶ 6.)

## III. The *Stearns* Litigation

In late 1999, Navigant shareholders filed multiple securities fraud class action lawsuits in the Northern District of Illinois against Navigant, naming Denari as one of the defendants. (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 17; R. 98-1, Genesis's Rule 56.1 Statement ¶ 17.) These lawsuits were consolidated before Judge Castillo under the caption *Stearns v. Navigant, et al.*, No. 99-C-7617. (*Id.*) Beginning in December 1999, Denari retained McDermott, Will & Emory ("MWE") to represent him in the *Stearns* litigation. (*Id.* ¶ 19.) MWE represented Denari until late summer 2000. (*Id.* ¶ 32.)

Navigant, Genesis, and the *Stearns* plaintiffs reached a tentative settlement agreement in early August 2000. (*Id.* ¶ 33.) On September 22, 2000, Navigant and the *Stearns* plaintiffs filed a Stipulation of Settlement with Judge Castillo. (*Id.* ¶ 36.) Denari objected to the settlement and hired Cummins & Cronin ("C&C") in September 2000 to represent his position regarding the settlement. (*Id.* ¶ 35, 39.)

The settlement agreement provided that to the extent they were not reimbursed by Navigant, insureds under the Genesis Policy would receive payment for "Individual Insured Defense Amounts," which was defined, in relevant part, as "Costs of Defense" under the Genesis Policy's definition of "Cost of Defense." (*Id.* ¶ 49-50.) The settlement required no payment from Denari and resulted in a complete release of the claims against him. (*Id.* ¶ 40.)

On December 1, 2000, Judge Castillo granted preliminary approval of the proposed settlement. (R. 98-1, Genesis's Rule 56.1 Statement ¶ 42.) On March 22, 2001, Judge Castillo approved the settlement agreement after a fairness hearing. (*Id.* ¶ 47.) That same day, C&C filed on Denari's behalf the present insurance coverage action in this Court seeking payment of fees. (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 53; R. 98-1, Genesis's Rule 56.1 Statement ¶ 53.)

## IV. Denari's Assistance To The *Stearns* Plaintiffs

Denari met with Fay Clayton, counsel for the *Stearns* plaintiffs, several times between June 2000 and September 2000. (R. 105-1, Pl.'s Rule 56.1 Statement ¶¶ 54-55; R. 98-1, Genesis's Rule 56.1 Statement ¶¶ 54-55.) Denari gave Clayton information that was "generally helpful for [her] entire investigation." (R. 98-1, Genesis's Rule 56.1 Statement ¶ 61.) Denari provided Clayton with a "road map" of Navigant's inner-workings and "other assistance" that enabled her to force a more advantageous settlement. (*Id.* ¶ 58.) Clayton further stated that

Denari "gave [her] information that helped [her] press forward in directions [she] might not have been able to press forward in." (*Id.*)

V. **Denari's Claims for Legal Fees**

In March 2003, Denari filed a "Petition for Fees and Costs" in the *Stearns* litigation seeking reimbursement for fees incurred by C&C in *Stearns* and in the separate insurance coverage action in this Court. (R. 98-1, Genesis's Rule 56.1 Statement ¶ 84.) After the parties fully briefed the issue, Judge Castillo denied Denari's petition and determined that "'costs of defense' encompass only those fees incurred in defending claims brought against Denari, and not fees incurred in asserting his own affirmative claims or positions. . . . Denari [may not] . . . recoup fees incurred in resisting settlement and/or pursuing a later-filed insurance coverage lawsuit." *In re Navigant Consulting Secs. Litig.*, No. 99 C 7617 (N.D. Ill. May 20, 2003) (J. Castillo) (order denying Defendant Stephen Denari's Petition for Fees and Expenses) ("Judge Castillo's Order").

Denari now seeks legal fees incurred by him as a result of work C&C performed on his behalf between September 2000 and November 2001 in the *Stearns* settlement and in the separate insurance coverage action in this Court. (R. 98-1, Genesis's Rule 56.1 Statement ¶¶ 53, 84.) These are the same fees that Judge Castillo addressed in his May 20, 2003 order. *(See* Judge Castillo's Order at 1.) Denari also seeks fees incurred by him from MWE's representation of him in the *Stearns* litigation between May 2000 and July 2000.[4] (R. 98-1, Genesis's Rule 56.1

---

[4] In his response to Defendants' Rule 56.1 statement, Denari asserted for the first time a claim for recovery of legal fees incurred by a third firm, Novack & Macey ("N&M"). (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 15.) Denari provides no evidence that these fees were covered by the policies, and Denari does not mention N&M fees in his memorandum of law. This claim is not properly before the Court. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997).

7

Statement ¶ 89.) Judge Castillo did not address the MWE fees in his order.

## ANALYSIS

I.  **Denari May Not Seek C&C Fees Under Either Policy**

    A.  **Denari is Collaterally Estopped From Seeking C&C Fees Under the Genesis Policy**

Collateral estoppel precludes litigation of an issue "if the following conditions are met: (1) the issue sought to be precluded is the same as that involved in the prior action, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was represented in the prior action." *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Judge Castillo's determination that the Genesis Policy does not cover certain C&C fees meets these requirements.

First, the issue whether particular C&C fees constitute "Costs of Defense" under the Genesis Policy in this case is identical to the issue in Denari's March 2003 Petition for Fees and Expenses before Judge Castillo. Whether the issues are identical is a question of law. *Adair*, 230 F.3d 893. The issue in both cases is clearly whether the terms of the Genesis Policy covered certain C&C fees. Further, the C&C fees at issue in this case are identical to the fees Judge Castillo considered. (*See* Judge Castillo's Order at 1 ("Denari seeks reimbursement and payment of attorneys' fees accrued during the settlement phase of this litigation, as well as fees associated with a separate insurance coverage lawsuit against Genesis Insurance Company.").)

---

Even if it were properly before the Court, the affidavit Denari provides from counsel makes clear that Denari incurred the N&M fees beginning in November 2001, more than one year after the settlement had been formulated. For the reasons stated in Section II.B, Denari is barred from seeking these fees as a matter of law. The Court further notes that Denari incurred these fees after he represented to the Court that he was proceeding *pro se* in this case. (R. 26-1, Nov. 15, 2001, *Pro Se* Appearance by Pl.)

8

Second, the issue was actually litigated. The issue was fully briefed before Judge Castillo. The parties submitted extensive documentation and memoranda on the issue (R. 105-1, Pl.'s Rule 56.1 Statement ¶¶ 84-86; R. 98-1, Genesis's Rule 56.1 Statement ¶¶ 84-86), and the Court issued a final order disposing of the issue.

Third, Judge Castillo's conclusion that the C&C fees were not "Costs of Defense" as defined by the Genesis Policy was essential to Judge Castillo's final judgment. Although this ruling did not resolve the entire litigation, it was clearly intended to finalize the particular question at issue. *See Tate*, 250 F. Supp. 2d at 960; *see also Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979). Judge Castillo's order was final as to that issue.

Finally, it is undisputed that Denari was fully represented in the action. C&C represented Denari in connection with his petition for fees and the subsequent briefing. (R. 105-1, Pl.'s Rule 56.1 Statement ¶¶ 84-86; R. 98-1, Genesis's Rule 56.1 Statement ¶¶ 84-86.) Denari himself put the question before the Court. (*Id.*)

Accordingly, Denari is collaterally estopped from seeking reimbursement of the particular C&C fees that Judge Castillo determined were not covered by the Genesis Policy.[5]

### B. Denari Is Barred From Seeking C&C Fees From Federal By The Plain Language Of The Federal Policy

Denari is barred from seeking C&C fees from Federal because those fees are not "Defense Costs" under the Federal Policy as a matter of law.

---

[5] Collateral estoppel, however, does not preclude Denari from seeking any other fees against Genesis or Federal. Collateral estoppel operates only against the specific fees that Judge Castillo addressed: C&C fees "accrued during the settlement phase of this litigation, as well as fees associated with a separate insurance coverage lawsuit against Genesis" filed in this Court. (Judge Castillo's Order at 1.)

9

Under Illinois law,[6] "construction of an insurance contract is a question of law, suitable for disposition by a court on a motion for summary judgment." *T.H.E. Ins. Co. v. City of Alton*, 227 F.3d 802, 805 (7th Cir. 2000). If a policy provision is clearly worded and unambiguous, its language will be interpreted in "its 'plain, ordinary and popular sense.'" *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 828 (7th Cir. 1992). All doubts and ambiguities, however, are to be resolved in favor of the insured. *Id.*

The Federal Policy unambiguously defines which fees constitute "Defense Costs" and which do not. The Federal Policy defines "Defense Costs" as "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the Insured Organization or the salaries of the employees, officers, or staff attorneys of the Company) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds." (R. 83-1, Federal's Rule 56.1 Statement ¶ 4.) The Federal Policy defines a "Claim" to include, *inter alia*, "a written demand for monetary damages or non-monetary relief" and "a civil proceeding commenced by the service of a complaint or similar pleading." (*Id.* ¶ 5.) Thus, "Defense Costs" include those costs incurred in connection with "defending or investigating" claims made against a Navigant officer.

The C&C fees that Denari seeks are not "Defense Costs." Denari did not retain C&C until September 2000. (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 35; R. 98-1, Genesis's Rule 56.1 Statement ¶ 35.) Navigant, Genesis, and the *Stearns* plaintiffs reached a tentative settlement in

---

[6] There appears to be no dispute that Illinois law applies. The Genesis Policy was issued to an Illinois corporation and Denari relies on Illinois law in his complaint as the basis for his requested relief.

10

early August 2000. (*Id.* ¶ 33.) The parties filed their Stipulation of Settlement with Judge Castillo on September 22, 2000. (*Id.* ¶ 36.) Thus, by the time C&C began working on Denari's behalf, the settlement had already been formulated and Denari had already begun resisting the settlement. Further, by that time there were no claims left for Denari to defend against because the settlement required no payment from Denari and resulted in a complete release of the claims against him. (R. 98-1, Genesis's Rule 56.1 Statement ¶ 40.) Further, any alleged fees incurred in connection with the insurance coverage action filed in this Court are not "Defense Costs" because in this lawsuit Denari is affirmatively pursuing his own claims against Genesis and Federal. In sum, Denari incurred the C&C fees while asserting his own affirmative claims and positions. Accordingly, Denari is barred by the plain language of the Federal Policy from seeking any C&C fees from Federal.

### III. There Is A Question Of Fact As To Whether Denari May Seek Certain MWE Fees From Genesis And Federal

Denari seeks MWE fees incurred between May 2000 and July 2000. (R. 98-1, Genesis's Rule 56.1 Statement ¶ 89.) At that time, the settlement agreement had not yet been formulated. (*Id.* ¶ 33.) Thus, it is possible that MWE performed work on Denari's behalf that was related to Denari's defense in the *Stearns* litigation, and that Denari is entitled to seek some of those fees.

#### A. The Genesis Policy's "Insured Versus Insured" Exclusion Precludes Recovery Of Certain MWE Fees From Genesis

Genesis argues that the Genesis Policy's "insured versus insured" provision unambiguously excludes coverage of certain MWE fees because it is undisputed that Denari affirmatively assisted the plaintiffs in the *Stearns* litigation. The Court agrees.

The Genesis Policy provides that Genesis shall not be liable for any "Loss" in connection

11

with any "Claim" "[b]rought by or at the behest of, or with the assistance or active participation of, [Navigant] . . . or any Director or Officer of [Navigant] . . ." (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 12; R. 98-1, Genesis's Rule 56.1 Statement ¶ 12.) The Genesis Policy defines "Directors" and "Officers" as "all past, current or prospective duly elected or appointed directors and officers of the Company . . ." (*Id.* ¶ 13.) Taken together, this language unambiguously states that Genesis will not cover any loss in connection with a claim brought "with the assistance" of a past Navigant officer.

It is undisputed that Denari is a past Navigant officer. (*Id.* ¶ 16.) Thus the question becomes whether Denari assisted the plaintiffs in the *Stearns* litigation. *Welch v. Agric. Excess & Surplus Ins. Co.*, No. 00 C 5725, 2001 WL 1155249, at *6 (N.D. Ill. Sept. 28, 2001) ("While *interpreting* an insurance contract is a question of law for the court, a party is still required to establish the undisputed facts which show a policy provision applies to prevail on summary judgment.").

Genesis asserts that Denari gave information to Fay Clayton, counsel for the lead plaintiff in the *Stearns* litigation, that was "generally helpful for [her] entire investigation." (R. 98-1, Genesis's Rule 56.1 Statement ¶ 61.) It is undisputed that Denari met with Clayton several times between June 2000 and September 2000. (R. 105-1, Pl.'s Rule 56.1 Statement ¶¶ 54-55; R. 98-1, Genesis's Rule 56.1 Statement ¶¶ 54-55.) Clayton testified that Denari provided her with a "road map" of Navigant's inner-workings and "other assistance" that enabled her to force a more advantageous settlement. (R. 98-1, Genesis's Rule 56.1 Statement ¶ 58.) Clayton further stated that Denari "gave [her] information that helped [her] press forward in directions that [she] might not have been able to press forward in." (*Id.*) Denari's responses to these statements of fact

contain non-responsive, additional information that belongs, if anywhere, in a separate statement of additional facts. As a result, Denari fails to effectively dispute that he assisted the *Stearns* plaintiffs in their action against Navigant.

Even if the Court were to consider this additional information, however, Denari fails to create a genuine issue of material fact because the additional information on which he relies is irrelevant. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988) ("Facts not outcome-determinative under the applicable law, though in dispute, may still permit the entry of summary judgment."). Rather than deny that he assisted the *Stearns* plaintiffs, Denari attempts to downplay the significance of his assistance. Denari states that he believes that he "probably provided a tiny amount [of information] in comparison to Navigant." (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 57.) He further asserts that "Clayton could not name any document I gave her which was *significant*," and that "[i]n essence, ANY of the information that Ms. Clayton got, whether from me, my attorneys or the other individual defendants or Navigant was helpful to her." (R. 105-1, Pl.'s Rule 56.1 Statement ¶¶ 58, 61.) Finally, Denari states that he was merely "attempting to be dropped as a party in the consolidated case that was *Stearns* and its 20 companion cases." (R. 105-1, Pl.'s Rule 56.1 Statement ¶ 54.) These assertions fail to create a genuine issue as to whether Denari provided assistance to the lead plaintiff in the *Stearns* litigation.

Accordingly, the Genesis Policy's "insured versus insured" exclusion precludes Denari from seeking fees from Genesis in connection with the *Stearns* litigation after Denari became adverse to Navigant by assisting the *Stearns* plaintiffs. Denari's assistance, however, does not bar all MWE fees. Denari only became adverse to Navigant once he began affirmatively assisting the *Stearns* plaintiffs on June 6, 2000. (*See* Denari Dep. (Jan. 25, 2002) at 74; *In re Navigant*

*Consulting Secs. Litig.*, No. 99 C 7617, R. 47-1, *Pro Se* Attorney Appearance for Def. Stephen J. Denari (June 6, 2000).) Accordingly, because he began assisting Clayton on June 6, 2000, Denari may not seek MWE fees from Genesis for work performed after June 6, 2000. The "insured versus insured" exclusion does not bar Denari from seeking MWE fees from May 2000 through June 6, 2000 from Genesis.[7]

### B. Denari May Seek MWE Fees From Federal

The Federal Policy provides that Federal "shall not be liable for LOSS on account of any CLAIM made against any INSURED PERSON brought or maintained by or on behalf of any INSURED . . ." (R. 83-1, Federal's Rule 56.1 Statement ¶ 6.) Unlike the Genesis Policy, the Federal Policy does not on its face exclude coverage for loss in connection with a claim brought "with the assistance or active participation of" a Navigant officer or director. Defendants argue only that Denari "assisted" the *Stearns* plaintiffs. They do not argue that Denari "brought or maintained" the claim himself. Accordingly, the Federal Policy does not as a matter of law preclude Denari from seeking MWE fees incurred between May and July 2000.

## IV. Denari May Not Seek Extracontractual Damages

In Count II, Denari seeks extracontractual damages as a remedy under Illinois statute 215 ILCS 5/155. Section 155 is penal in nature and must be strictly construed. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1102 (N.D. Ill. 2001). Section 155

---

[7] The Court notes that Genesis does not unequivocally assert that all MWE fees incurred in May 2000 were not "Costs of Defense." Genesis merely asserts that "[t]he [MWE] bills for this period [May 2000] consist *almost entirely of* work related to reviewing Genesis's reservation of rights and preparing a response to Genesis's request that Denari provide information related to the underlying claim pursuant to the cooperation clause of the Policy. *Most of* the May 2000 entries specifically reference attention to insurance matters or contact with Genesis with respect to the claim." (R. 98-1, Genesis's Rule 56.1 Statement ¶ 90) (emphases added).

applies "only against insurers who act vexatiously and unreasonably in delaying or denying a claim . . . wrongful denial of coverage by itself is not enough." *Knoll Pharm. Co. v. Auto. Ins. Co.*, 210 F. Supp. 2d 1017, 1028 (N.D. Ill. 2002). Where a bona fide dispute concerning coverage exists, or where the insurer asserts a legitimate policy defense in denying coverage, the insurer's conduct is not vexatious and unreasonable. *Spearman*, 138 F. Supp. 2d at 1102; *Knoll*, 210 F. Supp. 2d at 1028. Because the Court finds that Genesis and Federal acted lawfully and asserted legitimate policy defenses in denying coverage as a matter of law, Section 155 damages are inappropriate.

## V. Denari's Conspiracy Claim Fails As A Matter Of Law

In Count III, Denari alleges that Navigant and Genesis conspired to "breach the Genesis Policy" by not paying his legal fees. (R. 44-1, Pl.'s Second Am. Compl. ¶ 32.) To prevail on his civil conspiracy claim, Denari must show "(1) an agreement for some unlawful purpose or to use unlawful means and (2) a tortious act in furtherance of the conspiracy." *Bogosian v. Board of Educ.*, 73 F. Supp. 2d 949, 952 (N.D. Ill. 1999); *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 206 Ill. Dec. 636, 645 N.E.2d 888, 894 (1994). Genesis argues that Denari cannot prove an unlawful purpose because Genesis acted lawfully and in accordance with the Genesis Policy's plain language. The Court agrees.

It is difficult to assess Denari's argument with respect to his conspiracy claim because he failed to address it in his memorandum of law in opposition to summary judgment, and he failed to identify any facts supporting his conspiracy claim. Denari appears to allege that the underlying tort in this case is Genesis's alleged breach of contract. But as discussed above, Genesis acted lawfully and in accordance with the Genesis Policy's terms. The only fees to which Denari might

possibly be entitled under the Genesis Policy are the fees incurred by MWE during May 2000. Even with respect to those fees, Denari cannot allege that Genesis's refusal to pay constitutes the requisite tort, because there is no separate cause of action in tort for insurer bad faith. *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 527, 675 N.E.2d 897, 904 (1997). Thus, Denari cannot establish the first element of civil conspiracy because he cannot establish an unlawful purpose,[8] and his conspiracy claim therefore fails as a matter of law.

## CONCLUSION

The only fees Denari may continue to seek from Genesis are the MWE fees incurred in May 2000 through June 6, 2000. Denari is collaterally estopped from seeking C&C fees incurred in connection with the *Stearns* litigation and the present insurance coverage action because Judge Castillo conclusively determined that the Genesis policy does not cover those fees. The Genesis Policy's "insured versus insured" exclusion bars Denari from seeking certain MWE fees incurred in connection with the *Stearns* litigation from Genesis. Furthermore, Denari is not entitled to extracontractual damages against Genesis as a matter of law because Genesis acted lawfully and had a legitimate defense for denying coverage. Finally, because Genesis acted lawfully and because there is no issue of fact regarding whether an agreement existed between Genesis and Navigant, Denari's civil conspiracy claim fails as a matter of law. Genesis's motion for summary judgment is therefore granted in part and denied in part as to Counts I and II, and granted as to Count III.

The only fees that Denari may continue to seek from Federal are the MWE fees incurred

---

[8] Denari's conspiracy claim also fails because he does not identify any facts showing that an agreement existed between Navigant and Genesis to breach the contract.

between May and July 2000. The plain language of the Federal Policy bars Denari from seeking C&C fees as a matter of law, but questions of fact remain as to whether Denari is entitled to payment of MWE fees from Federal. Denari is not entitled to extracontractual damages against Federal as a matter of law because Federal acted lawfully and had a legitimate defense for denying coverage. Federal's motion for summary judgment on Counts I and II is granted in part and denied in part.

Dated: December 12, 2003                ENTERED

                                        AMY J. ST. EVE
                                        United States District Court Judge