# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy St. Eve | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2015 | **DATE** | 6/17/2004 |
| **CASE TITLE** | Stephen Denari vs. Genesis Insurance Co. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and Recommendation is submitted to Judge St.Eve. It is recommended that Plaintiff's Motion to Enforce Putative Settlement against Genesis Insurance Company and Federal Insurance Company [#119] be granted. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 17 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 132 |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 6/17/2004 date mailed notice | |
| FT/*pecy* | courtroom deputy's initials | 2004 JUN 17 AM 2:51 | FT mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN J. DENARI, | ) |
|     Plaintiff, | ) No. 01 C 2015 |
| | ) Judge Amy J. St. Eve |
| GENESIS INSURANCE CO., | ) Magistrate Judge |
| et al. | ) Arlander Keys |
|     Defendants. | ) |

TO: THE HONORABLE AMY J. ST. EVE
    UNITED STATES DISTRICT COURT JUDGE

**REPORT AND RECOMMENDATION**

Currently before the Court is *pro se* Plaintiff Stephen J. Denari's Motion to Enforce Putative Settlement against Genesis Insurance Company ("Genesis") and Federal Insurance Company ("Federal") (collectively, the "Insurance Companies"). Mr. Denari sued the Insurance Companies when they refused to pay legal fees that Mr. Denari incurred as a result of claims brought against him as an employee and officer of Navigant Consulting, Inc. ("Navigant"), Mr. Denari's former employer. The parties engaged in settlement negotiations and Mr. Denari contends that those negotiations resulted in a settlement agreement. Mr. Denari now seeks to have the Court enforce the terms of that agreement. For the reasons set forth below, this Court recommends granting Plaintiff's Motion.

DOCKETED JUN 17 2004

**BACKGROUND FACTS**

Mr. Denari served as Vice President of Navigant from 1997 until 1999, when Navigant terminated his employment. In late 1999, Navigant shareholders filed several securities fraud class action lawsuits against Navigant, Mr. Denari, and several other officers and directors of the company. These lawsuits were consolidated into a single action, which proceeded before Judge Ruben Castillo in the Northern District of Illinois. *See Stearns v. Navigant, et al.*, No. 99 C 7617.

The *Stearns* suit was eventually settled - over Mr. Denari's objections. Mr. Denari filed a "Petition for Fees and Costs," seeking reimbursement for legal fees incurred in the underlying litigation and in challenging the fairness of the settlement agreement. Judge Castillo ruled that Mr. Denari was barred from recouping fees "incurred in resisting settlement and/or pursuing a later-filed insurance coverage lawsuit." *In re Navigant Consulting Secs. Litig.*, No. 99 C 7617 (N.D.Ill. May 20, 2003) (J. Castillo). However, Judge Castillo's May 20th Order did not address the propriety of Mr. Denari's fee request as it pertained to the attorney fees he incurred in defending the underlying litigation.

Mr. Denari then filed a three count Complaint against the Insurance Companies seeking: 1) a declaratory judgment that he is entitled to his defense costs under the relevant insurance policies; 2) breach of contract damages; and 3) damages arising from an alleged conspiracy between Genesis and Navigant. *Denari v. Genesis Ins. Co.*, No. 01 C 2015 (Judge St. Eve). On December 15, 2003, Judge St. Eve granted in part and denied in part Genesis' Motion for Summary Judgment. *Denari v. Genesis Ins. Co.*, No. 01 C 2015, 2003 WL 22964371 (N.D. Ill. Dec. 15, 2003). Judge St. Eve instructed the parties to attempt to mediate the surviving claims. On February 2, 2004, the parties participated in settlement negotiations before this Court.

In addition to Mr. Denari and counsel for the Insurance Companies, counsel for Navigant – which was not named a party in Mr. Denari's suit -- participated in the settlement negotiations. After several hours, the parties agreed that the Insurance Companies would pay Mr. Denari $29,000 in exchange for his agreement to dismiss his federal lawsuit. The parties agreed to set forth the terms of the settlement in open court, but noted that the agreement was merely tentative, because Mr. Schoon, counsel for Navigant, was unable to reach his client for approval. This Court explained that, "rather than sit around waiting [for Mr.

3

Schoon to] get in touch with the client, we're going to have the terms of the proposed settlement stated for the record. . . ." Trans. of 2/2/04 at p. 2.

On the record, Mr. Denari agreed to dismiss the federal lawsuit against the Insurance Companies, in exchange for the payment of $29,000. Mr. Schoon stated that he would convey the terms of the settlement to his client and get back to Mr. Denari before the end of the day. Tr. of 2/2/04 at p.5. Later that evening, Mr. Schoon called Mr. Denari's cellphone and left a voicemail message stating that Navigant "can agree to the total payment as represented in Court." Pl.'s Reply, Ex. 1. The next morning, Defendants informed Judge St. Eve that the case had been settled. Tr. of 2/3/04 at p.2.

In March of 2004, Mr. Denari received a draft of the settlement agreement, which contained a myriad of new terms, including the requirement that Mr. Denari dismiss his state court suit against the Insurance Companies and Navigant – a term explicitly discussed and rejected during the 2/2/04 settlement negotiations. Mr. Denari subsequently filed this Motion to enforce the terms of the settlement, as stated in open court.

## DISCUSSION

An oral settlement agreement reached during mediation is fully enforceable by the court presiding over the underlying litigation. *Carr v. Runyan*, 89 F.3d 327, 329-33 (7th Cir. 1996). "[A] contract can be formed before there is an official document memorializing the deal." *Fidelity Mut. Life Ins. Co., v. American Nat'l Bank and Trust Co. of Chicago*, 1994 WL 14635 at *2 (N.D. Ill. Jan. 20, 1994). In order to establish the existence of an agreement, the parties must demonstrate that there was an offer, acceptance, and a meeting of the minds as to the terms of the agreement. The terms of the agreement must be sufficiently definite for the court to enforce the settlement. *Defalco v. Oak Lawn Public Library*, No. 99 CV 02137, 2000 WL 263922, at *3-4 (Mar. 1, 2000)(noting that courts may look to the ordinary linguistic meaning of a term to define the terms of the agreement.)

Although an oral settlement must set forth the terms of the agreement with sufficient definiteness, the settlement may be contingent upon a subsequent agreement. "[T]he fact that a settlement agreement calls for the parties to reach another agreement in the future – in other words, an 'agreement to agree'– will not prevent the settlement from being enforced." *Thermos Co. v. Starbucks Corp.*, No. 96

C3833, 1998 WL 299469, at *4 (N.D. Ill. May 29, 1998) (quoting *S and T Mfg. Co., Inc. v. County of Hillsborough*, 815 F.2d 676, 678-79 (Fed. Cir. 1987)). A party cannot avoid performance under an agreement to agree by withholding its consent, in bad faith, to the unresolved term. See generally, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992)

In the instant case, Mr. Denari's offer to settle the lawsuit was made on the record. Mr. Denari agreed to dismiss his federal lawsuit in exchange for $29,000, and the parties further agreed that a portion of those proceeds would be paid directly to Mr. Denari's counsel. Defendants stated that they would accept these terms if and when Navigant agreed. Mr. Schoon did, in fact, contact Mr. Denari later that evening, and stated that Navigant was on board and that "we have an agreement." Pl.'s Reply, Ex. 1. The next morning, Defendants informed Judge St. Eve that the parties had settled the case the night before. Tr. of 2/3/04 at *2.

Under these circumstances, Defendants' claim that the settlement was merely tentative and lacked finality is without merit. It is clear from the record that the only impediment to a final, "on the record" settlement agreement was Navigant's approval. Mr. Denari has presented

uncontradicted evidence that Navigant approved the terms of the settlement, thereby finalizing the parties' agreement.

Defendants next argue that the scope of Mr. Denari's release is vague, rendering the oral agreement too indefinite to enforce. The Court acknowledges that the transcript of the 2/2/04 hearing permits either a **narrow** ("in return for the payment of $29,000, [Mr. Denari] would dismiss this case, this particular case with prejudice") or **broad** ("That's a dismissal with prejudice, a release of all claims known or unknown under both the policies at issue") interpretation of the release. Compare Tr. of 2/2/04 at pp.3-4, lines 25 and 1, with p. 4, lines 7-9.

However, this Court's very clear recollection is that, during settlement negotiations, Mr. Denari adamantly refused to drop his state court claims in exchange for $29,000, and that both the Insurance Companies and Mr. Schoon acknowledged Mr. Denari's refusal to accept such a broad release. The parties clearly agreed in chambers that Mr. Denari would be relinquishing only his federal claims under the insurance policies. Indeed, throughout the settlement negotiations, Mr. Denari made it clear to the Court and to Defendants and Mr. Schoon that, if they wanted to include the State Court claims in the settlement agreement, they would have to pay much more than $29,000. All parties at

7

the settlement conference knew of the existence of the State Court action and how important it was to Mr. Denari[1]. Therefore, the fact that it was not mentioned on the record - because it would have been a deal breaker - clearly shows that it was not included in the settlement agreement.

Genesis' final attempt to distance itself from its acceptance of Mr. Denari's settlement offer is equally unavailing and particularly disingenuous. Genesis contends that this Court lacks jurisdiction to enforce the settlement agreement, because Navigant is not a party to the lawsuit[2]. The settlement agreement does not require this Court to exercise its jurisdiction over Navigant - only over the Insurance Companies. The Insurance Companies agreed to accept Mr. Denari's settlement demand once it received the green light from Navigant - ie, there was an "agreement to agree." Once Mr. Schoon contacted Mr. Denari and communicated Navigant's approval of the settlement terms, and once the Insurance Companies revealed their knowledge of Navigant's approval by explaining to Judge St. Eve that the

---

[1] Mr. Denari explained that he had incurred over $100,000 in legal bills, and that a win in state court represented his best chance for satisfying that obligation.

[2] During negotiations, the Court permitted Navigant's counsel to participate in the settlement conference because of its insistence that, as an indemnifier, it had an interest in the outcome of the negotiation and because of Genesis' position that it would not settle the dispute without Navigant's permission.

8

parties had reached an agreement, the settlement agreement was complete. The Insurance Companies were bound by their previous agreement to agree, and thereby accepted Mr. Denari's settlement demand.

Finally, Mr. Denari requests that the Court sanction Defendants for "their misrepresentations and continued misuse of the Court's . . . time in a now unveiled attempt to tie up the Plaintiff at the behest of its funding source: Navigant." Pl.'s Reply at 3.

Rule 11[3] prohibits parties from presenting any pleading, motion or other document for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1). In determining whether sanctions are warranted, the Court evaluates the parties' conduct for "reasonableness under the circumstances." *Indianapolis Colts v. Mayor and City Council*, 775 F.2d 177, 181 (7th Cir. 1985).

This Court is inclined to agree that Defendants' conduct is likely sanctionable. Defendants selectively refer to portions of the 2/2/04 transcript to bolster their claim that the oral settlement was only tentative and not yet final. In doing so, Defendants conveniently ignore the fact

---

[3] Plaintiff has not identified the basis in law for awarding sanctions against Defendants.

9

that their acceptance of Mr. Denari's demand was contingent only upon Navigant's approval of the settlement terms, and that Mr. Schoon contacted Mr. Denari confirming Navigant's approval of the settlement[4].

Equally troubling is Defendants' attempt to broaden the agreed upon release to include Mr. Denari's state court claims. Although the 2/2/04 transcript does not expressly contradict such an interpretation, the parties' settlement discussions before this Court clearly revealed each parties' understanding that the release was limited to Mr. Denari's federal claims.

However, Rule 11(c)(1)(A) requires that a sanctions motion "shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate" the Rule. Rule 11 further requires parties seeking sanctions to provide a 21 day safe harbor to the allegedly offending party. Neither procedure was followed in this case. And while the Court retains the inherent authority to sanction Defendants, see *Methode Electronics, Inc. v. Adam Tech., Inc.*, — F.3d —, No. 03-3252, 2004 WL 1301852, at *4-5 (7th Cir. June 14, 2004), Defendants have not been given the opportunity to respond to Mr. Denari's charges. Therefore,

---

[4] Perhaps Mr. Schoon was unaware that Mr. Denari had saved a copy of his voicemail.

the Court finds that sanctions would be inappropriate at this time.

## CONCLUSION

In conclusion, this Court is of the opinion that a settlement agreement was reached in this case on February 2, 2004. Mr. Denari set forth the terms of his demand in open court, and Defendants agreed to accept those terms once Mr. Schoon's client, Navigant, communicated its approval. Therefore, this Court recommends that Mr. Denari's Motion be GRANTED.

DATED: June 17, 2004    Respectfully Submitted:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Amy St. Eve. *See* Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).